[S. F. No. 106.    In Bank.—April 1, 1896.]

HORACE A. REDFIELD, RESPONDENT, *v.* OAKLAND CONSOLIDATED STREET RAILWAY COMPANY, APPELLANT.

NEGLIGENCE—OPERATION OF ELECTRIC RAILWAY BY ONE MAN—RUNAWAY OF CAR—EXPERT EVIDENCE—CUSTOM.—In an action for the death of a person injured through the runaway of an electric car on a down grade, by reason of the fact that the car was left in the operation of a single man, who was compelled to leave the car to adjust the trolley at a switch, and who, through a fall to the ground, was unable to regain the car, expert evidence is inadmissible to show that, according to the experience and general custom of electric street railway companies, one man was sufficient to operate an electric car, although the witnesses could speak from their observation of the fact that certain roads did operate certain cars with but one man in charge.

ID.—OPINION OF RAILWAY COMPANIES—ULTIMATE FACT OF NEGLIGENCE—PROVINCE OF JURY.—Where evidence as to a custom of electric railway companies amounts to the opinion of such companies as to the ultimate fact of negligence in the employment of a single man to attend an electric car, who is required to leave it when in motion, such evidence is not admissible; but such ultimate fact is matter to be inferred by the jury from the evidence, without the aid of expert or opinion evidence.

ID.—IMMATERIAL EVIDENCE—RELATIVE NUMBER OF WOMEN AS PASSENGERS—HARMLESS RULING.—A question asked of the defendant's witness upon cross-examination, for the purpose of showing that more women than men were accustomed to ride upon the electric cars where the injury occurred to the woman for whose death the action was brought, should properly be excluded as immaterial; but the admission of such evidence is harmless where it appears that it could not and did not affect the question of negligence, or prejudicially affect the defendant.

ID.—ACTION BY HUSBAND FOR DEATH OF WIFE—EVIDENCE—DAMAGES—
LOSS OF SERVICE TO CHILDREN—VALUE TO PLAINTIFF—INSTRUCTIONS.
In an action by a husband for the death of his wife, caused by the runa-
way of an electric car, evidence is admissible to show that his wife was
manager of his household, and did all the work, and cared for, trained,
and educated the children, and attended to their moral welfare, as tend-
ing to show the value of the wife's services to the plaintiff; and although
no injury sustained by the children can be compensated in such action,
it is not error to refuse to instruct the jury that they cannot consider
the loss of service or protection which the plaintiff's children suffered by
reason of the injury to his wife, as they have a right to consider the
value of such services to the plaintiff, and it must be assumed that they
did not consider them for any other purpose, especially where the court
expressly instructed them that they were to award only the actual
pecuniary damage sustained by the plaintiff, and no more.

APPEAL from a judgment of the Superior Court of
Alameda County.   W. E. GREENE, Judge.

The facts are stated in the opinion.

*Chickering, Thomas & Gregory, R. M. Fitzgerald,* and
*Carl H. Abbott,* for Appellant.

The court erred in sustaining the objections to the
questions asked witnesses Leland and Grim in regard
to the number of men necessary to manage a car under
the conditions stated, as they had qualified as experts,
and the subject was a proper one for expert testimony.
(*Union Pac. Ry. Co.* v. *Novak,* 61 Fed. Rep. 573; *Belle-
fontaine etc. R. R. Co.* v. *Bailey,* 11 Ohio St. 336, and
cases cited; Rogers on Expert Testimony, sec. 4.)   The
court erred in overruling the objection to the question
asked witness Grim: "Don't you know there are more
women visit that cemetery than men?"   As the question
at issue was the negligence of the company, it made no
difference whether the majority of passengers were men
or women.   The court erred in refusing to give the in-
struction asked by defendant, as, in an action by the
husband for injuries to his wife, he cannot recover for
the loss suffered by the children.

*Hall & Earl,* for Respondent.

There was no error in sustaining objections to ques-
tions asked witnesses Grim and Leland in regard to

the number of men necessary to manage the car, as the questions do not call directly for the opinions of the witnesses as experts, but are addressed to ascertaining what the custom among electric roads is as to the number of men found necessary to manage such a car. If it was error, the error was cured by the subsequent admission of testimony covering the same ground. (*Duffy* v. *Duffy*, 104 Cal. 602; *Alexander* v. *Central etc. Co.*, 104 Cal. 532.) This was not a case where expert testimony was admissible, as the witnesses could have easily described the car, the road, and its manner of operation, and let the jury determine whether a proper degree of care for the safety of passengers demanded the employment of more than one man. (*Manufacturers' etc. Co.* v. *Dorgan*, 58 Fed. Rep. 945; *Louisville etc. Ry. Co.* v. *Berry* (Ind. App.), 35 N. E. Rep. 565; *Sturdivant* v. *Fort Worth etc. Ry. Co.* (Tex. Civ. App.), 27 S. W. Rep. 170; *Harley* v. *Buffalo Car Mfg. Co.*, 142 N. Y. 31; *Houston* v. *Brush*, 66 Vt. 331; *Cleveland etc. Ry. Co.* v. *De Bolt* (Ind. App.), 37 N. E. Rep. 737; *Bergquist* v. *Chandler Iron Co.*, 49 Minn. 511; *St. Louis etc. Ry. Co.* v. *Jones* (Tex.), 14 S. W. Rep. 309; *Seese* v. *Northern Pac. R. Co.*, 39 Fed. Rep. 487; *Enright* v. *San Francisco etc. R. R. Co.*, 33 Cal. 230; *Sappenfield* v. *Main Street etc. R. R. Co.*, 91 Cal. 59.) It was proper to allow the question, "Don't you know there are more women visit that cemetery than men," as it tended to throw some light upon the degree of care that ought to be used. The instruction asked by defendant was properly refused, as the evidence showed that the wife performed certain household duties and services for the children, but the services were for her husband, and relieved him of a burden that he would otherwise had to have borne.

HAYNES, C.—Upon the trial of this cause the plaintiff had judgment, and the defendant appeals therefrom and from an order denying its motion for a new trial. The action was brought by the plaintiff, the husband of Adeline B. Redfield, to recover for the loss of the services

of his wife from May 6 to June 29, 1893, and for neces-
sary medical and surgical attendance during said period,
resulting from an injury to the wife alleged to have been
caused by the negligence of the defendant.   The jury
returned a verdict for seventeen hundred dollars, and
judgment was entered for that sum.   The errors relied
upon by appellant relate to the admission and exclusion
of evidence, and the refusal of the court to give to the
jury an instruction requested by the defendant.   A brief
statement of facts is necessary.

The plaintiff and his wife had two children.   The
wife and children visited Mountain View Cemetery on
May 6, 1893, and took one of defendant's cars to return
to the city of Oakland.   The road upon which this car
ran was a branch of defendant's main line, and the cars
thereon were operated by one man, and had been for
about a year, the electric motor being on the front plat-
form, where there was also a brake.   The platforms were
separated from the body of the car by glass partitions
extending across the car, as did also the seats, and the
only way to pass from one end of the car to the other
was by a step extending from one end to the other along
the side of the car.   For a considerable distance from
the cemetery the road consisted of a single track, and the
grade was comparatively level; but near the southerly
end of the single track there was an up grade and
at the top a switch, from which point there was a double
track extending to the city.   At or near the top of the
grade, and before reaching the switch, the motorman
shut off the power, the car having sufficient momentum
to carry it past the switch, and jumped off the front
platform and got upon the rear platform to change the
trolley to the proper wire when passing the switch; and,
from that point, there was a down grade for about half
a mile to Booth street, where the track turned to the
west. After adjusting the trolley at the switch, the motor-
man attempted to return to the front platform, but fell
to the ground, and when he got up he was unable to
catch the car, which ran with great speed down the

grade to the turn at Booth street, at which point it left the track and ran into a field, and Mrs. Redfield was thrown off and received injuries from which she died on June 29, 1893.

Plaintiff's principal contention was that defendant was negligent in operating said car with but one man in charge. To rebut this charge of negligence the defendant called one Leland, whose qualifications as an expert were not disputed, and put to him the following question: "If it appears that the grade where the accident in question occurred was about a three per cent grade, and upon that same line, can you state what experience has shown electric street railway companies is the number of men required in handling such a car at such places and under such conditions?"

The defendant also called Mr. Grim, who was familiar with the road and car in question, and had long experience in operating electric roads, and put the following question: "From that experience are you now able to state to this jury what the general custom is among electric roads as to the number of men found necessary to manage such a car upon such a track as this, and under the condition under which this car was operated?"

Objections to these questions were sustained. These questions called for testimony as to the experience and custom of electric street railway companies as to whether one man was sufficient to operate such cars upon such roads.

If these witnesses were regarded as experts, and their individual opinions were required, the questions were too general, and did not embrace particulars which should have been stated; and so, if custom could be shown, it must appear that the cars used, the switch to be passed, and the grade of the road at the place where the motorman was required to leave his post to change the switch, were similar. But, aside from these criticisms upon the interrogatories, custom may originate in motives of economy, or the stress of pecuniary affairs,

or in recklessness, and not from considerations based
upon the proper discharge of their duty toward others
using their cars. These witnesses could speak only
from their observation of the fact that certain roads did
operate certain cars with but one man in charge, and
not as to the reason or motive for doing so. But con-
ceding that many roads did so because they believed
one man sufficient, it would still be but the testimony
of the witness that the several companies indulging in
the custom were of the *opinion* that it was not negligent
to do so. These questions did not call for the opinions
of these witnesses as experts, but practically called for
the opinion of others as inferred from their conduct;
whilst if those others were called and examined they
might admit that while indulging in the custom they
knew it was dangerous.

But it was not a case where opinions were admissible
as evidence. All the circumstances from which the
ultimate fact of negligence upon the one hand, or due
care upon the other, must be found were established by
unconflicting evidence, and such ultimate fact was a
matter to be inferred by the jury from the evidence.

In *Shafter* v. *Evans*, 53 Cal. 32, it was said: "The
ultimate fact of negligence in such a case is not one to
be established by the mere opinion of witnesses called
to testify. The evidence of experts is not admissible."
In that case this court quoted from the opinion of Chief
Justice Shaw, in *New England Glass Co.* v. *Lovell*, 7
Cush. 321, as follows: "In applying circumstantial evi-
dence which does not go directly to the fact in issue,
but to facts from which the fact in issue is to be in-
ferred, the jury have two distinct duties to perform:
First, to ascertain the truth of the fact to which the
evidence goes, and thence to infer the truth of the fact
in issue. This inference depends upon experience.
When this experience is of such a nature that it may be
presumed to be within the common experience of all
men of common education moving in the ordinary

CXII. CAL.—15

walks of life, there is no room for the evidence of opinion; it is for the jury to draw the inference."

In *Sappenfield* v. *Main Street etc. R. R. Co.*, 91 Cal. 48, 59, a witness was asked: "From your experience in driving those cars and using those pins, would you say that was a safe pin—the straight pin?" The pin was used on a horsecar. An objection that it was not a proper subject for expert testimony was overruled, and the ruling was held erroneous. The court said: "When the inquiry relates to a subject whose nature is not such as to require any peculiar habits or study in order to qualify one to understand it, or when all the facts upon which the opinion is founded can be ascertained and made intelligible to the court or jury, the opinion of the witness is not to be received in evidence. If the relation between the facts and their probable results can be determined without any special skill or training, the facts themselves must be given in evidence, and the conclusions or inferences must be drawn by the jury. If the circumstances out of which the negligence is said to arise have been established by proof, or can be shown, the ultimate fact of negligence is an inference to be drawn by the jury, and is not to be established by the opinions of others." (See, also, the cases there cited, and *Kauffman* v. *Maier*, 94 Cal. 280, par. 4.

It is true this car had been operated by one man, without accident, for about a year prior to the injury to Mrs. Redfield; but, as was said by Mr. Justice McFarland, in *Monaghan* v. *Pacific Rolling Mill Co.*, 81 Cal. 193, where a chain suspended from a hook fell upon the plaintiff: "It is argued that it had hung suspended there for some years without accident; but that circumstance is only a matter of wonderment, and is an instance of how good luck will sometimes protect carelessness for long periods."

The case of *Union Pac. Ry. Co.* v. *Novak*, 61 Fed. Rep. 573, cited by appellant, is distinguishable from this case. The case there was whether one brakeman was sufficient to check or control the speed of a train by

means of handbrakes. That question could only be answered correctly by one who had experience; but it would hardly require more than ordinary intelligence and observaion to determine whether a railroad company would be guilty of negligence to passengers upon its road if it should impose upon the engineer the performance of a duty which would compel him to leave his engine while the train was in motion.

These experts were, however, permitted, without objection, to testify that, in their opinion, one man could operate the car in question, at the place in question, with a requisite degree of safety to the passengers; and it is not perceived that evidence as to the custom of electric roads would have added to the weight of this testimony, if it were competent.

One of the defendant's witnesses was asked, upon cross-examination, the following: " Don't you know that there are more women visit that cemetery than men?" An objection thereto by the defendant, that it was immaterial and irrelevant, was overruled, and an exception taken. The witness answered, " Yes, sir."

The objection should have been sustained. Not only is it immaterial whether more women than men ride upon the cars of the defendant upon that part of its road, but the question was not restricted to those who used defendant's cars in visiting the cemetery, but was so general as to include all modes or means of going there.

It is not every error in ruling upon questions of evidence, however, that will justify a reversal of the judgment. If it were otherwise, affirmances upon appeal would be comparatively rare. Section 475 of the Code of Civil Procedure provides that: " The court must, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect."

The question involved was the alleged negligence of

the defendant in operating its cars with only one man in charge. All the circumstances connected with the accident were shown by the evidence, and were such as to show conclusively that it was liable to occur at any time. Whether the passengers were all men or all women could not avoid or affect the necessity of the motorman leaving his post and going to the other end of the car to adjust the trolley in passing the switch. If the question had not been put to the witness, or if defendant's objection had been sustained, the result could not have been different. It is not argued that the amount of damages awarded was, or could have been, affected by the answer of the witness, nor that the damages are excessive; but the argument is that it could not legitimately affect the question of negligence. We are convinced that not only could it not legitimately affect the question of negligence, but that it did not affect it, and that defendant was not prejudiced by the error complained of.

Appellant also contends that the court erred in refusing to give the following instruction to the jury, as requested by the defendant: " In this action you are hereby instructed that you cannot consider the loss of service or of protection which the plaintiff's children suffered by reason of the injury to Mrs. Redfield."

This contention is based upon the fact that the plaintiff testified that his wife was manager of his household and did all the housework, cared for the children, made their clothing and hats, kept them clean, neat, and tidy, gave them piano lessons, and to some extent vocal lessons and lessons in drawing and painting, all which she was competent to do, attended to their moral training and habits, corrected them for their faults, taught them their prayers, and assisted them to some extent in their studies.

It is true that no injury sustained by the children could be compensated or considered in this action; but as the duty of caring for and educating his children would devolve npon the plaintff during her disability,

and for which he was at all times responsible, it was competent for him to show, in estimating the value of the wife's services to him, the character of his household, the fact that he had children, and the character of her services to and for them; just as it would have been competent for the defendant to show that plaintiff kept servants who attended to all housekeeping affairs; a competent governess who attended to the training and care of the children, and a seamstress to do all the family sewing, and that the wife's position was merely ornamental. It is not contended that the evidence above stated was incompetent, or that it did not tend to show the value of the wife's services to the plaintiff, and therefore it cannot be assumed that the jury considered it for any other purpose. Besides, in regard to this element of the plaintiff's injury, the court instructed the jury that if they found the wife had been injured through the negligence of the defendant, the plaintiff is entitled to recover such damages, and such damages only, as he may have suffered, if any, through the loss of the services of his wife, if any, resulting from such injuries, as well as such reasonable costs and expenses, etc. . . . . . You are permitted to determine what pecuniary loss the plaintiff suffered by the illness of the deceased from the sixth day of May to the twenty-ninth day of June, and to find in that amount and in no greater amount. . . . . You are to find the actual pecuniary damage sustained by him and no more." If there was anything in the evidence which might have misled the jury, and I think there was not, these instructions specifically confined their estimate of damages to such as the husband sustained, and rendered the instruction requested to be given wholly unnecessary. But the instruction as requested would have been misleading. The jury might readily have inferred from it that all the evidence relating to the wife's services to the children was not to be considered for any purpose. If the instruction had been that they could not consider any injury or damage suffered by the children resulting from the loss of ser-

vice to them, but that such loss of service could only be considered so far as it affected the value of her services to the plaintiff, it would have been unobjectionable, though unnecessary in view of the instructions given.

No other questions are made by counsel for appellant.

The judgment and order appealed from should be affirmed.

BELCHER, C., and BRITT, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

MCFARLAND, J.,        VAN FLEET, J.,
GAROUTTE, J.,        TEMPLE, J.,
HARRISON, J.,        HENSHAW, J.